# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In Re:                                              Civil No. 09-1255 (DWF)

John William Cannon Dahl, and
Cindy Lou Dahl,

              Debtors;                          **MEMORANDUM**
                                          **OPINION AND ORDER**

James Michael Swart, individually and as
sole director and shareholder of
Countryside Gold & Landscaping, Inc.;
J.S. & Associates Golf Course Design,
Inc.; and Par 4 Shaping, Inc.,

              Appellees,

v.

John William Cannon Dahl, and
Cindy Lou Dahl,

              Appellants.

---

Gregory R. Anderson, Anderson Larson Hanson & Saunders, P.L.L.P., for Appellants.

Julie L. Fisk and Andrew D. Hultgren, Neils, Franz, Chirhart, Hultgren, and Evenson, P.A., and Samuel V. Calvert, Calvert Law Office, for Appellees.

---

## INTRODUCTION

This matter is before the Court on appeal from a judgment of the United States Bankruptcy Court prohibiting discharge of a state-court fraud judgment against the debtors.[1]  For the reasons stated below, the judgment is affirmed.

---

[1]    Robert J. Kressel, United States Bankruptcy Judge, District of Minnesota.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1998, Appellees James Michael Swart, individually and as sole director and shareholder of Countryside Gold & Landscaping, Inc., L.S. & Associates Golf Course Design, Inc., and Par 4 Shaping, Inc. ("judgment creditors") obtained a state court judgment against Debtor-Appellants John William Dahl and Cindy Lou Dahl ("judgment debtors") in the amount of $67,251.65 in an action based on a claim of fraud, deceit, and embezzlement.  (Doc. No. 5 at A1-A4.)  As the expiration of the ten-year term of that judgment approached without it having been fully satisfied, the judgment creditors sought to extend its life by commencing, in August 2008, an action in state court to renew the existing judgment.  (*Id.* at A5.)

On October 8, 2008, the judgment debtors filed a petition for bankruptcy, thereby automatically staying the state-court renewal action.  (That action remains pending, not having yet proceeded to any judgment.)  The judgment creditors then brought an adversarial proceeding in bankruptcy court, requesting a determination that their claim was non-dischargeable under Section 523 of the bankruptcy code.  On cross-motions for summary judgment, the bankruptcy court held that the state-court renewal action was based on a valid claim against the judgment debtors that was asserted within the applicable limitations period.  (*Id.* at A7.)  And because it was a claim based on fraud or embezzlement, it was non-dischargeable.  (*Id.* at A8.)  This appeal followed.[2]

## DISCUSSION

---

[2]     This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) (providing that district courts shall have jurisdiction to hear appeals from final judgments of bankruptcy judges serving in that district).

## I.    Standard of Review

On appeal from a judgment of the bankruptcy court, this Court reviews findings of fact based on a clear error standard and reviews the bankruptcy court's conclusions of law *de novo*.  *In re MBA Poultry, L.L.C.*, 291 F.3d 528, 533 (8th Cir. 2002).

## II.    Exceptions From Discharge For Fraud Claims

Under the bankruptcy code, certain debts are excepted from discharge, including those "for fraud or defalcation . . ., embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  Here, the judgment debtors had been found liable for deliberate "fraud, deceit, embezzlement, and conversion."  (Doc. No. 5 at A3.)  Accordingly, after the debtors filed for bankruptcy protection under Chapter 7, the judgment creditors initiated an adversarial proceeding to except from discharge the unsatisfied state-court judgment.

But because that state-court judgment had been entered in September 1998, under Minnesota law it was due to expire in September 2008.  Accordingly, the judgment creditors commenced–in August 2008, before the expiration–an action in Minnesota state court to "renew" the September 1998 judgment.  The issue thus presented is whether a judgment creditor may obtain an exception from discharge for a state-court fraud judgment set to expire, where that creditor commences the renewal action before the expiration, but had not yet obtained relief in state court before the ten-year period had run.

The judgment debtors appeal the bankruptcy court's judgment, arguing that "[t]here are two distinguishable claims" here, (1) the "original judgment that expired" in September 2008 and thus "is no longer enforceable," and (2) the judgment creditor's new

claim seeking "a new, second judgment on the same set of facts" that supported the original judgment. (Doc. No. 3 at 1.) Appellants thus contend that those factual findings cannot support any new or renewed judgment because they "merged into the first judgment and no longer exist." (*Id.*)

Although the judgment debtors are plainly correct that the judgment creditor may not enforce the judgment more than ten years after it was entered, their *res judicata* argument–that the factual findings that supported the original judgment "merge into the judgment" such that they do not survive so as to be able to support any second judgment (be it a renewal of the original or a separate new judgment)–is an erroneous application of claim preclusion principles.

## A.    Renewal-of-Judgment Actions Under Minnesota Law

Minnesota law apparently permits "renewal-of-judgment actions." *Shamrock Dev., Inc. v. Smith*, 737 N.W.2d 372, 376 (Minn. App. 2007), *rev'd on other grounds*, 754 N.W.2d 377 (Minn. 2008).[3] "The procedure for renewing a judgment is not specifically prescribed by statute, but caselaw indicates that actions are routinely brought to renew judgments so that the judgments extend beyond the initial ten-year period." 737 N.W.2d

_____

[3]    In *Shamrock*, the Minnesota Supreme Court reversed the judgment on the grounds that the plaintiff's "attempted service of process by publication" did not satisfy "the requirements of Minn. R. Civ. P. 4.04(a) and the Due Process Clause." 754 N.W.2d at 379. Moreover, it expressly noted that the issue of whether Minnesota law allowed "for the renewal of judgments" by "commencing a new civil action within the 10-year limitations period" was "not raised in [appellant's] petition for further review" and therefore was "not before" the Supreme Court on appeal. The Supreme Court thus assumed "without deciding that a civil judgment may be renewed by the entry of judgment in a new civil action commenced within the statutory limitations period for enforcement of the original judgment." *Id.* at 380 n.2.

at 376 (citing *Tharp v. Tharp,* 36 N.W.2d 1 (1949)).  A party "may bring an action to renew a judgment" if "(1) the action is *commenced* within ten years after entry of the original judgment, and (2) the party complies with all the requirements for commencing a civil action."  *Id.* (emphasis added).[4]  A judgment creditor need not also succeed in having judgment rendered, much less rendered and entered, before the ten-year period runs.  Requiring completion of such further conditions–which involve actions by the court and are also somewhat dependent on the opposing litigant–would greatly diminish if not entirely defeat any effective control by the creditor over the procedure.[5]

### B.     Claim Preclusion and Merger

Here, the judgment creditors commenced their state-court renewal action in August 2008, before the September 2008 expiration, and apparently complied with all requirements for doing so.  Nevertheless, the judgment debtors contend that the bankruptcy court erred because the findings of the court that issued the first judgment

---

[4]      The judgment debtors rely on *Twarp v. Twarp*, 36 N.W.2d 1 (1949), to support their argument that Minnesota does not recognize such renewal actions.  (Doc. No. 3 at 2.)  But in *Twarp*, the party seeking renewal failed to properly serve the debtor. 36 N.W.2d at 3.  And this limitation on renewal actions to those parties that "compl[y] with all the requirements for commencing a civil action" is included in the parameters of the renewal doctrine as recognized in *Shamrock*, 737 N.W.2d at 376.  Here, there is no suggestion that the judgment creditors failed to properly serve the judgment debtors or to otherwise initiate their renewal action.

[5]      The judgment debtors rely on *In re Stoddard*, 248 B.R. 111 (Bankr. N.D. Ohio 2000), as construing Minnesota law.  But any such argument is misplaced because *Stoddard* addressed a judgment creditor's attempt to revive its "dormant" judgment under Ohio law, which is similar to, although not identical with, Minnesota law.  248 B.R. at 116-17.  Moreover, the judgment debtors' assertion that the judgment becomes unenforceable "once the ten years has passed without enforcement" is beyond dispute as far as it goes, but irrelevant as it ignores the fact that Minnesota law provides the means to avoid that outcome by timely filing a "renewal" action within the ten-year period.

merged into that judgment and thus "do not survive and outlast it so that subsequent courts . . . can act on the same findings." (Doc. No. 3 at 7.) But the state court presently considering the judgment creditors' current action would not be impermissibly basing any judgment it might issue on the factual findings that merged into the original judgment. Rather, it would–in accordance with Minnesota law–simply be "renewing" the original judgment based on an action filed by the creditors within the applicable ten-year period. No principle or purpose of *res judicata* would be infringed because the judgment creditors would not thereby obtain any greater judgment than what they already obtained. They simply would not lose the ability to enforce that same judgment after ten years.

The judgment debtors' argument that such renewals violate the basic principles of claim preclusion cannot survive Minnesota's recognition of renewal-of-judgment actions. Otherwise, no such renewals could ever be valid. Their attempt to apply principles of claim preclusion misunderstands that doctrine. At its core, claim preclusion prohibits a party from filing a second action based on the same claim on which that party had filed an earlier action that has proceeded to judgment. *Brown v. Felsen*, 442 U.S. 127, 131 (1979).[6] If the party prevailed in the first action, that party's claim is "merged in the

---

[6] It also prohibits such a party from filing a second action that includes a claim that could have been brought in the first action, but was not. *Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."). But this aspect of claim preclusion is of course not relevant here as the judgment creditors are not now seeking to bring some other claim that they could have brought, but failed to bring, in 1998.

judgment." Restatement (Second) of Judgments § 17(1).[7]  Once that judgment issues, the prevailing party may proceed only on that judgment, not on the underlying facts or claims.

But here, the judgment creditors do not run afoul of the concept of merger.  They are not relying on the same facts or claim to get a second judgment *in addition to* the first so as to recover the same damages twice.  (Nor are they trying to bring a different claim that they could have brought back in 1998, but did not.)  Rather, they are simply seeking to extend the temporal life of the original judgment so that they may continue to enforce it until it is fully satisfied–to obtain full satisfaction on the one claim that has been reduced to judgment but not yet entirely paid by the judgment debtors.[8]

The judgment creditors rely on *Brown v. Felsen*, 442 U.S. 127 (1979), for the argument that claim preclusion does not apply here.  (Doc. No. 4 at 7-8.)  But in *Brown*, the Court addressed whether, in federal bankruptcy proceedings, a judgment creditor could oppose discharge on the grounds of the debtor's fraud by relying on extrinsic evidence of fraud that was introduced in the state-court proceedings but not reflected in the state-court judgment or the stipulation on which it was based.  The Supreme Court

---

[7]     If, however, that party did *not* prevail in the first action, "the judgment bars a subsequent action on that" party's claim.  *Id.* § 17(2).  Here, however, the judgment debtors seem to conflate merger and bar, as if they operated together in the same context.  (Doc. No. 3 at 4 (arguing that creditors' present claims are *barred* because they *merged* into original judgment).)  But merger is confined to where the plaintiff prevails in the first action, whereas bar is confined to where the defendant prevails.  *E.g.*, Restatement (Second) of Judgments §§ 17-19.  The present case thus concerns only merger.

[8]     Whether one views the action as one to "renew" the original judgment, to "extend" its enforceable lifespan, or, as Judge Kressel viewed it, to obtain a "new judgment" is thus essentially irrelevant for present purposes.

ruled that while general principles of claim preclusion and merger would usually prohibit consideration of such issues and evidence once the state-court judgment issued, the nature of bankruptcy proceedings warranted an exception for such inquiries. 442 U.S. at 1134-39. But this Court need not even go that far because here the state-court judgment is expressly one for fraud and embezzlement. The judgment creditors are not now trying to establish that the debtors engaged in fraud, but rather only trying to renew the existing fraud judgment.

In fact, the Restatement of Judgments recognizes that where "the period of the statute of limitations applicable to the judgment has almost run," the judgment creditor may employ "appropriate proceedings" to "revive the executability of the judgment or bring an action upon the judgment and obtain a new judgment upon which the limitations period will run again." Restatement (Second) of Judgments § 18, cmt. c.[9]

---

[9] The judgment debtors also argue that the statute of limitations would bar the state-court renewal action. (Doc. No. 3 at 11 n.2.) But the renewal action seeks to renew an existing judgment and thus is based on that judgment (rather than on the underlying facts or claim on which the original judgment was based and which would not only have merged into that judgment but likely also have become stale). As the Restatement and Minnesota law plainly recognizes, the relevant limitations period is the period for enforcing the judgment. In Minnesota, that period is ten years. Minn. Stat. §§ 541.04, 550.01. And as long as a renewal action is brought within that ten-year period, any resulting judgment would initiate a new enforcement period regardless of whether the limitations period had run on either the original underlying claim or the ensuing original judgment. *See* Restatement (Second) of Judgments § 18, cmt. c (noting that once judgment is renewed, "limitations period will run again").

## C.    Renewal Action As "Debt" or "Claim"

Finally, the judgment debtors also argue that while federal bankruptcy law
expressly recognizes an exception from dischargeability for a "debt" for "fraud" or
"embezzlement," the creditors' current "claim"–an "action to renew a judgment"–is not
within the recognized exceptions from discharge under Section 523.  (Doc. No. 3 at 5-6.)
But Section 523 refers to a "debt" for fraud, embezzlement, or larceny.  11 U.S.C.
§ 523(a)(4).  Clearly, a judgment on a claim for fraud, embezzlement, or larceny would
constitute such a "debt."  The question becomes whether an action to renew such a
judgment–particularly an action filed within the applicable limitations period but not yet
reduced to judgment–also constitutes such a "debt."

The bankruptcy code defines "debt" as "liability on a claim."  11 U.S.C. § 101(12).
The code then defines "claim" to include a "*right to payment, whether or not such right is
reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured,
disputed, undisputed, legal, equitable, secured or unsecured."  *Id.* § 101(5)(A) (emphasis
added).  Congress thus intended "to adopt the broadest available definition of 'claim.'"
*Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).  *Accord In re Nation-Wide
Exchange Services, Inc.*, 291 B.R. 131, 145 (D. Minn. 2003) (stating that code's
definition of "claim" is "the 'broadest available' to Congress").  And "debt" as used in the
bankruptcy code "has a meaning coextensive with that of 'claim.'"  *Id.* at 84 n.5.

In sum, a properly served and timely filed action to "renew" an existing valid
judgment for fraud and embezzlement brings the judgment debtors' obligation within the
definitional reach of Section 523(a)(4) as a debt that they may not have discharged in

bankruptcy. Such a result is consistent with the long-standing policy of the bankruptcy code to prohibit "debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998) (prohibiting discharge of not just debt for actual loss caused by fraud, but for treble damages awarded for such fraud). Otherwise, the party guilty of fraud could evade that "debt" by delaying its satisfaction until the applicable limitations period had run.

## CONCLUSION

A timely-filed action to renew a judgment for fraud and embezzlement under Minnesota law constitutes a debt that under Section 523(a)(4) of the bankruptcy code may not be discharged.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     The judgment of the United States Bankruptcy Court is **AFFIRMED**.


Dated:  September 25, 2009                        s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge